UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:16-CR-263-T-33JSS

ANTONIO ULPIANO ESTUPINAN TELLO

       Defendant.
_____/

## DEFENDANT ANTONIO ULPIANO ESTUPINAN TELLO'S SENTENCING MEMORANDUM

Comes now the Defendant, ANTONIO ULPIANO ESTUPINAN TELLO, by and through undersigned counsel, and hereby files this Sentencing Memorandum in advance of the sentencing proceeding scheduled for December 12, 2016.  On September 14, 2016, Mr. Estupinan Tello entered a plea of guilty to Count One of the Indictment charging him with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1), 70506 (a) and (b) and 21 U.S.C. § 960(b)(1)(B)(ii).  (doc. 37).  For the reasons set forth below, Mr. Estupinan Tello prays the Court show leniency and sentence him to 120 months incarceration rather than the 135 months suggested by the Sentencing Guidelines.

## I.  BACKGROUND

Mr. Estupinan Tello is from a port town on the northwestern coast of Ecuador.  He has never been to the United States and never expected to find himself in his current situation.  Mr. Estupinan Tello is thirty-one years old and by all accounts has never been in trouble prior to this incident.

1

Mr. Estupinan Tello grew up very poor.  He has ten brothers and sisters.  Most work as fisherman like their father.  Mr. Estupinan Tello only finished the sixth grade and cannot read or write.  He left school and a promising future as a soccer player to work to help support his parents and siblings.  Mr. Estupinan Tello and his family are still very poor, but he had always earned an honest living as a fisherman and performing other odd jobs.  Mr. Estupinan Tello no longer lives with his parents, but he supports his common-law wife and three children.   However, Mr. Estupinan Tello has had no contact with his family since his arrest.  He does not have their contact information nor the financial ability to contact them.  Undersigned counsel has tried contacting the Ecuadorian consulate for help locating his family, but they have not responded.  He does not know if he will ever see his wife or children again.

A good work day for Mr. Estupinan Tello would be to earn $10 a day.  Work as a fisherman can be inconsistent, but Mr. Estupinan Tello was able to modestly provide for his family.  However, in April 2016 a magnitude 7.8 earthquake devastated the economy in his area.  Mr. Estupinan Tello's hometown of Bocana de Lagarto is in the Esmeraldas region near the epicenter of the earthquake. Work was very hard to come by and Mr. Estupinan Tello made the unfortunate decision to participate in this offense in order to earn money to support his family.   Knowing of the dire financial situation of Mr. Estupinan Tello and those like him, a person contacted him about a job which happened to be in the drug trade.  From Mr. Estupinan Tello's perspective, he had no other options.  Mr. Estupinan Tello deeply regrets his decision to accept that job, but at the time he was desperate and believed he had no other way to provide for his family.

Mr. Estupinan Tello is a simple, humble man.  Transporting drugs seemed like his only way out of financial despair, and he never dreamed he would find himself imprisoned in the United States.   After his arrest, Mr. Estupinan Tello admitted his involvement in the offense to the

Government and promptly pleaded guilty.  It was not an easy decision as he has had no contact with anyone familiar to him for counsel, has little education, and does not understand the United States legal system.  Mr. Estupinan Tello respectfully asks the Court to set aside its trepidation about him and sentence him to the ten year mandatory minimum.

## II.  SENTENCING, 18 U.S.C. § 3553(a)

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011) (citing *Koon v. United States,* 518 U.S. 81, 113, 116 (1996)).  Mr. Estupinan Tello unquestionably suffers from human failings.  He made an irresponsible decision during a tumultuous time in his life.  Nonetheless, he respectfully requests the Court grant him the possibility to return to his family as soon as is permitted under the law.

### 1.  *The Nature and Circumstances of the Offense, Section 3553(a)(1)*

As the Supreme Court recently reiterated, "the punishment should fit the offender and not merely the crime."  *Pepper*, 131 S.Ct. at 1240 (citations omitted).  As is the case with nearly every Federal offense, the nature and circumstances of Mr. Estupinan Tello's offense are serious.  From Mr. Estupinan Tello's perspective, he was simply riding on a boat from point A to point B.  That type of rationalization is easier to accept in one's mind at a time of personal strife.  Desperation to help his family clouded Mr. Estupinan Tello's judgment.  His decision was neither wise nor commendable, but the judgments of desperate people are often regrettable.  Under Section 3553(a) a sentencing court may properly consider a defendant's motive. *United States v. Ranum*, 2005 WL 161223, *5 (E.D.Wis. 2005) (citing *Wisconsin v. Mitchell,* 508 U.S. 476, 485 (1993)).

2.   *The History and Characteristics of the Defendant, Section 3553(a)(1)*

By all accounts, Mr. Estupinan Tello is a hard worker, a good husband, and a loving father. But, he is very poor.  Although his family does not know his whereabouts or have the ability to travel to the United States for sentencing, they have always fully supported him.  Mr. Estupinan Tello has constantly been willing to sacrifice for his family as evidenced by giving up his education and dream of a soccer career to contribute to his parents during a rough time.  He has always taken that responsibility very seriously, and that same sense of obligation to sacrifice for his family ultimately led to his decision to participate in this offense.  Sometimes a person's strengths can also be a weakness under different circumstances.

Mr. Estupinan Tello is not well educated and lacks an array of job skills that would allow him to find employment in an economy damaged by the earthquake. Mr. Estupinan Tello earned about $10 a day when he could find work.  He never earned enough to have savings or own any significant assets that would help him survive a difficult period of unemployment.  It was difficult for Mr. Estupinan Tello to watch his family struggle, especially after the earthquake.

Mr. Estupinan Tello's participation in this offense is regrettable.  Yet, Mr. Estupinan Tello has shown that he can live a law abiding life and there is no reason to doubt that he will reform his behavior as a result of this offense.  *See, e.g., United States v. Sayad*, 589 F.3d 1110, 1118-1119 (10th Cir. 2009) (finding downward variance reasonable where defendant was "good candidate for rehabilitation" based on defendant's recognition of seriousness of offense, strong family support, letters from the community, and lack of drug or sociopathic problems).

Mr. Estupinan Tello is pained by knowing his transgressions have cost him the opportunity to contribute to the well-being of his wife and children.   Prior to Mr. Estupinan Tello's arrest his family was very poor.  Now, they are destitute.  The Bureau of Prisons will provide Mr. Estupinan

Tello with a roof, a bed, and food.  Unfortunately, Mr. Estupinan Tello's family will bear the burden of his incarceration as they slip deeper into poverty.  *See United States v. Jebara*, 313 F.Supp.2d 912, 917 (E.D.Wis. 2004) (departure warranted to avoid "needless suffering" of family).

Mr. Estupinan Tello is the sole support for his already impoverished family.  His loss is irreplaceable.  Mr. Estupinan Tello is from a country where poverty is sadly common.  His family, particularly his wife, does not have the opportunities that a family in the United States may have to make up for his loss.  Mr. Estupinan Tello's entire extended family is poor so there is no one who can provide for his family.  Nor does the government of Ecuador have the resources or programs to address the problems of Mr. Estupinan Tello's family.   Mr. Estupinan Tello's return to his family will certainly not solve all of their financial problems, but he is likely the only chance they have.

In the past the Sentencing Guidelines necessitated extraordinary circumstances to justify a departure for family circumstances or the loss of caretaking and support.  However, following *Gall,* there is no requirement of "'extraordinary' circumstances to justify a sentence outside the Guidelines range."  *Gall*, 552 U.S. at 47.

Mr. Estupinan Tello prays the Court see the good in him and give him a small variance in his sentence so he can spend the remainder of his life proving his worth to his family and community.  "But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F.Supp.2d 506, 513-514 (S.D.N.Y. 2006).

   3. *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense, Section 3553(a)(2)(A)*

Without question, at the time of his offense, Mr. Estupinan Tello did not appreciate the consequences of his offense, and he certainly never imagined he would find himself in a United States prison.  However, through this process Mr. Estupinan Tello has developed a knowledge and respect for the criminal justice system which most will never know.  Mr. Estupinan Tello could have no greater respect for the law than at this moment.  And, although Mr. Estupinan Tello has no knowledge of the United States legal system nor any allegiance to this country, he always been respectful of the process and has been a model inmate.

Mr. Estupinan Tello is frightened about what the future holds, and he is heartbroken that he has left his family to subsist without his help. A just punishment in this situation must take into account that Mr. Estupinan Tello has also been punished in ways other than the traditional prison sentence. He will be incarcerated in a foreign country where he knows no one.  He has essentially been cut off from his family and friends.  His family will likely never visit him during his incarceration.  Currently, he cannot contact his family because he has no contact information or money to place calls.  When he is eventually released, he has no assurances that his family will be waiting for him.  Mr. Estupinan Tello will be severely punished for his offense, and a sentence greater than 120 months is unnecessary.

4. *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct, Section 3553(a)(2)(B)*

Deterrence to Mr. Estupinan Tello and the community at large is an important societal interest.  However, there is no reason to believe that a sentence of 135 months will have any greater deterrent effect than a sentence of 120 months.  An outsider viewing Mr. Estupinan Tello's situation would not conclude he escaped penalty simply because he received a sentence below his guideline range.

The Government's interest in discouraging people like Mr. Estupinan Tello from participating in narcotics transportation is strong. However, a sentence of 120 months is a significant deterrent.

5. _The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant, Section 3553(a)(2)(C)_

Although Mr. Estupinan Tello's choice of means by which to earn money was lamentable, he has never shown a propensity for violence or criminal behavior beyond this incident. Undoubtedly, Mr. Estupinan Tello needs to make better decisions and reform his behavior, but his first-hand experience of the consequences of criminal conduct will deter any future criminal conduct. However, because he will have little, if any, contact with his family during his incarceration, the longer he is imprisoned, the more likely he will lose touch with his family and his transition to society will be more difficult. Finally, he has never been to the United States and has no plans to return so he does not pose a direct threat this community.

6. _The Need for the Sentence Imposed to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner, Section 3553(a)(2)(D)_

Mr. Estupinan Tello would benefit from educational and work opportunities, and he intends to take advantage of programs offered at his prison facility. Mr. Estupinan Tello finds himself in this situation because he did not have the education or skills to find gainful employment. Learning to read and write, learning English, and adding job skills would help Mr. Estupinan Tello support his family and keep him from falling back into crime. Although prison may offer Mr. Estupinan Tello opportunities to improve himself, he will likely be able to accomplish that during a sentence of 120 months. A longer sentence will only deteriorate his ability to transition back to society.

7. _The Kinds of Sentences Available, Section 3553(a)(3)_

Following _Booker_, the Court is free to impose any reasonable sentence.

8. *The Sentencing Guidelines, Section 3553(a)(4)*

Mr. Estupinan Tello requests the Court impose a downward departure for minimal or minor role pursuant to USSG § 3B1.2. Pursuant to *United States v. Cruickshank*, No. 14-13754 (11th Cir. 2016), a defendant in Mr. Estupinan Tello's position is eligible for a role adjustment. The recent clarification to USSG § 3B1.2 provides that "[f]or example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." U.S.S.G. Supp. App. C, Amend. 794. That example encapsulates Mr. Estupinan Tello's role in this offense.

Mr. Estupinan Tello's participation in the offense satisfies nearly all of the non-exhaustive list of factors found in Application Note 3(C) of § 3B1.2. Mr. Estupinan Tello had little understanding of the scope and structure of the criminal activity. He only knew enough to allow him to perform the specific tasks he was directed to perform. He did not recruit anyone to join the activity and was himself recruited by someone else. He was not responsible for obtaining the drugs, nor was he aware of where they came from, who owned them, or the amount. To this day he would not know the quantity of drugs without reviewing the information provided by the Government. He did not obtain the boat, choose the course, or prepare the boat for the journey. He had no involvement in planning or organizing even the most basic activities associated with the activity. He had no decision making authority or influence over any other person. In fact, if he had deviated in any way from the instructions given to him, he likely would have been harmed. In his role as a crew member, he had no discretion over how the drugs were to be transported, the route, the individuals he would work with, or any other details associated with moving something from point A to point B. He was to be paid for being a crew member on the boat and had no proprietary interest in the purchase or sale of any of the drugs.

Like *Cruickshank*, while the amount of drugs in this case is substantial, "there is nothing in the record to suggest that the amount of drugs was indicative of the magnitude of [the defendant's] participation in the crime -- to the contrary, he did not load the drugs on the vessel, reconstruct the vessel, fuel the vessel, attend the planning meetings for the trip, or otherwise appear to have any role concerning the quantity of drugs." *United States v. Cruickshank*, 14-13754 at 21 n. 1.  The amount of drugs involved in this case was not something over which Mr. Estupinan Tello had any control and does not distinguish this case from *Cruickshank*.

Although Mr. Estupinan Tello's role on the boat was not essential as he was the third of three crew members, even if his role was important, such a factor is not determinative.  U.S.S.G. Supp. App. C, Amend. 794.  Nearly every job associated with a criminal enterprise, or even a legitimate enterprise, could be considered important to some aspect of the enterprise, otherwise the job would not exist.  Someone above Mr. Estupinan Tello organized and funded this voyage, obtained the drugs and the boat, mapped the course, loaded the boat, determined a launching and docking spot, and recruited the people to fill the multiple jobs required to accomplish the voyage. Mr. Estupinan Tello played his part, but it was a small part in comparison.

Finally, a downward departure may be appropriate where Mr. Estupinan Tello's status causes a fortuitous increase in the severity of his sentence. *United States v. Smith*, 27 F.3d 649, 655-656 (D.C. Cir. 1994).  For a departure on such a basis to be reasonable, the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence.  *Id*. A court confident that the status will lead to worse conditions should depart only when persuaded that the greater severity is undeserved.  *Id*.  Mr. Estupinan Tello is a foreign national and speaks no English nor does he read or write in Spanish.  He will have difficulty communicating with prison officials and fellow

inmates which could lead to harsher treatment or loss of opportunities which may otherwise be available to him.  Also, his contact with his family will be hindered by his economic status, the cost of international calls and visits, and the expected transience of his family with the loss of his support.  Prison is already difficult, but without contact with outsiders, his time will be even more arduous.

If the Court does not find Mr. Estupinan Tello qualifies for a departure for any of these reasons under the rigid framework of the guidelines, Mr. Estupinan Tello asks the Court to consider his circumstances in total and grant him a variance from his guidelines sentence.  *See United States v. Canova*, 412 F.3d 331, 358 n. 28 (2d Cir. 2005) ("[A]fter *Booker,* a district judge can fairly consider policy statements concerning departures and fairly decide to impose a non-Guidelines sentence without definitively resolving close questions regarding the precise meaning or application of a departure policy statement.").  Subject to review for reasonableness, district judges are now free to apply their own perceptions of just punishment, deterrence, and protection of the public even when these differ from the perceptions of the Commission members who drew up the guidelines.  *United States v. Rodriguez*, 406 F.3d 1261, 1289 (11th Cir. 2005) (Tjoflat, J., dissenting) (citing *Booker*, 125 S.Ct. at 790 (Scalia, J., dissenting)).

9. *The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Section 3553(a)(6)*

"Congress [through the Sentencing Guidelines]…sought to eliminate only 'unwarranted' disparities, while enabling judges to consider those factors that cannot be tallied in advance, but that may create 'warranted' disparities in sentencing."  *United States v. Jaber*, 362 F.Supp.2d 365, 373 (D. Mass. 2005).  Sentencing Mr. Estupinan Tello to 120 months of incarceration will not create an "unwarranted" disparity among defendants found guilty of similar conduct.  Many Defendants previously convicted of similar conduct have had their sentences reduced to 120

months through Amendment 782 proceedings.  *See, e.g., United States v. Santos Abilio Arriola Murillo*, 8:12-cr-36-T-35AEP.   Also, the recent clarification to USSG §3B1.2 has supported the application of a role departure in cases like this where it may not have been applied in the past. Finally, a departure or variance in Mr. Estupinan Tello's case is warranted based on all the reasons previously discussed in this memorandum.  *See, e.g., United States v. Ochoa-Molina*, 15-14866 (11th Cir. 2016)(unpublished opinion)("because the circumstances are disparate, a disparity between the sentences imposed for the two convictions would not necessarily be unwarranted.").

## III.  CONCLUSION

For the reasons stated above, Mr. Estupinan Tello prays the Court show leniency on him and sentence him to 120 months incarceration.

Respectfully submitted,

TROMBLEY & HANES

By:  s/ P. Matthew Luka
    P. MATTHEW LUKA
    mluka@trombleyhaneslaw.com
    Florida Bar No.  555630
    707 North Franklin Street, 10th Floor
    Tampa, Florida  33602
    Telephone: (813) 229-7918
    Facsimile:   (813) 223-5204

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of December 2016, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Daniel Baeza
Assistant United States Attorney
400 North Tampa, Suite 3200
Tampa, Florida 33602